Filed 7/15/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| DAVID EVENSKAAS, | B308354 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV19436) |
| CALIFORNIA TRANSIT, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Reversed with directions.

Dunn DeSantis Walt & Kendrick, LLP, Kevin V. DeSantis and Bradley Lebow for Defendants and Appellants.

Kabateck LLP, Brian S. Kabateck, Anastasia K. Mazzella, Shant A. Karnikian and Jerusalem F. Beligan; Law Offices of Eric A. Boyajian, APC, Eric A. Boyajian and Amaras Zagarian for Plaintiff and Respondent.

## INTRODUCTION

The Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.) requires any public entity that operates a public transportation system to provide certain paratransit services to individuals with disabilities. (See *id.*, § 12143.)[1] Access Incorporated Services (not a party to this action) is the public entity that administers paratransit services required by the ADA in Los Angeles County. Access, in turn, contracts with California Transit, Inc. to provide those paratransit services in parts of the county.

David Evenskaas worked as a driver for California Transit. After California Transit terminated his employment, Evenskaas filed this wage and hour class action against California Transit; its owner, Timmy Mardirossian; and the company that administered California Transit's payroll, Personnel Staffing Group, LLC (collectively, the California Transit defendants). Because Evenskaas signed an arbitration agreement, in which he agreed to arbitrate all claims arising from his employment and waived his right to seek class-wide relief, the California Transit defendants filed a motion to compel arbitration.

The trial court denied the motion. The court ruled California law, rather than the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), applied to the agreement because the agreement did not involve interstate commerce. The court further ruled that, under the California Supreme Court's decision in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*),

---

[1] "Paratransit means comparable transportation service . . . for individuals with disabilities who are unable to use fixed route transportation systems." (49 C.F.R. § 37.3 (2022).)

Evenskaas's waiver of his right to bring class action claims was unenforceable.

The California Transit defendants appeal, contending the FAA applies to the arbitration agreement. They are correct. Because the paratransit services California Transit hired Evenskaas to provide involve interstate commerce for purposes of the FAA, the FAA applies to the arbitration agreement and preempts the *Gentry* rule that certain class action waivers in employment arbitration agreements are unenforceable. Therefore, we reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *California Transit Provides Federally Mandated Paratransit Services*

Congress enacted the ADA to, among other things, address "discrimination against individuals with disabilities [that] persists in such critical areas as . . . public accommodations, . . . transportation, . . . and access to public services . . . ." (42 U.S.C. § 12101(a)(3).) The ADA includes several provisions requiring public and private entities that provide transportation services to ensure those services are accessible to persons with disabilities. (See *id.*, §§ 12141-12165, 12184.) In particular, the "ADA requires municipalities to provide paratransit and other special transportation services to individuals whose disabilities do not permit them to use the regular fixed routes.[2] [Citation.] The

---

[2]    "The term 'fixed route system' means a system of providing designated public transportation on which a vehicle is operated along a prescribed route according to a fixed schedule." (42 U.S.C. § 12141(3).)

3

level of this service must be 'comparable' to that afforded riders who are not disabled." (*Abrahams v. MTA Long Island Bus* (2d Cir. 2011) 644 F.3d 110, 112; see 42 U.S.C. § 12143(a).) The United States Secretary of Transportation, pursuant to the authority given by Congress under the ADA (see 42 U.S.C. § 12143 (b)), has issued regulations governing paratransit services, including various requirements paratransit service providers must meet "[t]o be deemed comparable to fixed route service." (49 C.F.R. § 37.121(b (2022)); see *id.*, §§ 37.123-37.133; see also *Abrahams*, at p. 115.)

According to California Transit, Access is the "public entity . . . charged with administering a countywide coordinated paratransit plan on behalf of [Los Angeles County's] public fixed route operators. Pursuant to that plan, Access facilitates the provision of complementary . . . paratransit services to certain persons with disabilities . . . ." Access, in turn, contracts with California Transit, which provides "paratransit services for the West/Central Region of Los Angeles County."

> B. *Evenskaas Sues the California Transit Defendants, Who File a Motion To Compel Arbitration*

California Transit employed Evenskaas as a driver for its paratransit service vehicles from November 2017 to August 2018. In May 2020 Evenskaas filed a class action against the California Transit defendants on behalf of himself and other drivers, asserting various wage and hour claims.

The California Transit defendants filed a motion to compel Evenskaas to arbitrate his individual claims and to dismiss his class claims. The defendants submitted an arbitration agreement Evenskaas signed in November 2017 that "covered all

4

claims, controversies or disputes . . . arising out of employment, including, but not limited to . . . wages, compensation, benefits, . . . [and] violation of any federal, state and city or county laws, statutes, regulations or ordinances . . . ." The agreement provided:

"**Arbitration.** The parties mutually agree to submit all claims, controversies or disputes covered by this Agreement, to binding arbitration . . . . Both [California Transit] and [Evenskaas] acknowledge that each is knowingly and voluntarily waiving any right to pursue such claims in court before a judge or jury, including bringing or participating in class action claims, and instead will pursue such claims exclusively through binding arbitration . . . . Both [California Transit] and [Evenskaas] acknowledge and agree that only individual claims, and not any claims on behalf of a group or class, can be subject to arbitration under this agreement."

The California Transit defendants contended the FAA applied to the arbitration agreement. They argued the agreement involved interstate commerce because California Transit provided "ADA-compliant paratransit services" and Evenskaas "perform[ed] trips for passengers with disabilities." The defendants also argued the court should dismiss Evenskaas's claims for class-wide relief because the FAA preempts the California Supreme Court's decision in *Gentry*, *supra*, 42 Cal.4th 443 that certain class action waivers in employment arbitration agreements are unenforceable.

Evenskaas contended the FAA did not apply. He argued the arbitration agreement did not involve interstate commerce because California Transit provided paratransit services only in Los Angeles County and never outside California. Evenskaas

5

also argued the class action waiver was unenforceable under *Gentry*. In reply the defendants argued the class action waiver was enforceable under *Gentry* even if the FAA did not apply. They conceded, however, that if the class action waiver was unenforceable, the entire arbitration agreement was unenforceable because the waiver was "an inextricable and material aspect of the" agreement.

C.     *The Trial Court Denies the Motion*

The trial court denied the motion, largely agreeing with Evenskaas. The court ruled the FAA did not apply to the arbitration agreement because the California Transit defendants failed to show that any passengers who used their services were interstate passengers and therefore only "intrastate activities were involved." The court ruled that under *Gentry* the class action waiver was unenforceable because a class action would be more effective than individual claims in "permitting the [California Transit] employees to enforce their statutory rights." (See *Gentry*, *supra*, 42 Cal.4th at p. 463.) Finally, in light of the defendants' concession the entire arbitration agreement was unenforceable if the class action waiver was unenforceable, the court denied the motion to compel arbitration in its entirety. The California Transit defendants timely appealed.

**DISCUSSION**

A.     *Applicable Law and Standard of Review*

"The FAA was enacted in 1925 . . . and then reenacted and codified in 1947 as Title 9 of the United States Code. . . . [I]ts 'purpose was to reverse the longstanding judicial hostility to

6

arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts.'" (*E.E.O.C. v. Waffle House, Inc.* (2002) 534 U.S. 279, 288-289 [122 S.Ct. 754, 151 L.Ed.2d 755]; see *Viking River Cruises, Inc. v. Moriana* (2022) ___ U.S. ___, ___ [2022 WL 2135491, p. 6].) The FAA stands as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 235; see *Epic Systems Corp. v. Lewis* (2018) ___ U.S. ___, ___ [138 S.Ct. 1612, 200 L.Ed.2d 889].)

"Section 2, the primary substantive provision of the FAA, provides: 'A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 384.) For purposes of section 2, the "word 'involving' is broad and is indeed the functional equivalent of 'affecting,'" which "signals Congress' intent to exercise its Commerce Clause powers to the full." (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 273 [115 S.Ct. 834, 130 L.Ed.2d 753]; see *Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56 [123 S.Ct. 2037, 156 L.Ed.2d 46] (*Citizens Bank*).) Therefore, the FAA's "reach is expansive and coincides with that of the commerce clause." (*Scott v. Yoho* (2016) 248 Cal.App.4th 392, 400; see *Allied-Bruce Terminix Companies,* at p. 274.) "Employment contracts, except for those covering workers" specifically exempted by the statute, "are

covered by the FAA." (*E.E.O.C. v. Waffle House, supra*, 534 U.S. at p. 289.)

The party asserting the FAA applies to an agreement has "the burden to demonstrate FAA coverage by declarations and other evidence." (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1207; see *Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1101; see generally *Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 956 ["The party who claims that a state statute is preempted by federal law bears the burden of demonstrating preemption."].) Normally, "'[w]hen, as here, the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding was erroneous as a matter of law.' [Citations.] '"Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"'" (*Trinity v. Life Insurance Company of North America* (2022) 78 Cal.App.5th 1111, 1121; see *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067; *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 837.) Here, however, the relevant facts were undisputed.[3] Therefore, we

---

[3] The only fact in dispute is whether Access receives federal funding, which the trial court declined to find. The California Transit defendants ask us to take judicial notice of Access's proposed budget for the 2020-2021 fiscal year, which they claim shows Access receives federal funding. We deny their request as improper and unnecessary. Even if a government entity's proposed budget is an "official act" of the entity (see Evid. Code,

8

review de novo whether the FAA applies to the agreement. (See *Scott v. Yoho*, *supra,* 248 Cal.App.4th at p. 399 ["Where the facts are undisputed, the question of whether the transaction involves interstate commerce so as to implicate the [FAA] is a question of law subject to de novo review."]; *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205, 1211 [same].)

B.    *The Agreement Involves Interstate Commerce*

The California Transit defendants' primary argument is that, because California Transit provides paratransit services required by federal law and "subject to federal control [and] regulation," the arbitration agreement between Evenskaas and California Transit involves interstate commerce. Evenskaas argues the trial court correctly ruled the defendants failed to show the agreement involved interstate commerce because

§§ 452, subd. (c), 459)—a questionable proposition—the defendants ask us to infer that Access's *proposed* budget for 2020-2021 reflects the *actual* funding it received several years earlier, when Evenskaas worked for California Transit. (See *Mangini v. R. J. Reynolds* (1994) 7 Cal.4th 1057, 1063 ["the taking of judicial notice of the official acts of a governmental entity does not in and of itself require acceptance of the truth of factual matters which might be deduced therefrom, since in many instances what is being noticed, and thereby established, is no more than the existence of such acts and not, without supporting evidence, what might factually be associated with or flow therefrom'"], overruled on another other ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257; see *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.) As we explain, even without evidence Access receives federal funding, the undisputed evidence shows the defendants' activity affects interstate commerce.

California Transit provided paratransit services only within Los Angeles County.  The law and the facts support the defendants.

The United States Supreme Court has identified "three categories of activity that Congress may regulate under its commerce power: (1) 'the use of the channels of interstate commerce'; (2) 'the instrumentalities of interstate commerce, or persons or things in interstate commerce, . . .'; and (3) 'those activities having a substantial relation to interstate commerce, . . . i.e.*,* those activities that substantially affect interstate commerce.'"  (*Taylor v. United States* (2016) 579 U.S. 301, 306 [136 S.Ct. 2074, 195 L.Ed.2d 456]; see *Gonzalez v. Raich* (2005) 545 U.S. 1, 16-17 [125 S.Ct. 2195, 162 L.Ed.2d 1].) "[A]ctivities in [the] third category—those that 'substantially affect' commerce—may be regulated so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal."  (*Taylor*, at p. 306; see *Gonzalez*, at p. 17.)  Congress may "regulate purely local activities," so long as they "are part of an economic 'class of activities' that have a substantial effect on interstate commerce." (*Gonzalez*, at p. 17; see *Taylor* at p. 307.)  "When Congress decides that the '"total incidence"' of a practice poses a threat to a national market, it may regulate the entire class," and "when a '"general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence."'"  (*Gonzalez*, at p. 17.)

"Because the [FAA] provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' [citation] it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in

10

commerce"—that is, 'within the flow of interstate commerce . . . .'"
(*Citizens Bank*, *supra*, 539 U.S at p. 56.)  Consistent with
Congress's power to regulate an entire class of activity, FAA
preemption does not require that an agreement has a specific
effect on interstate commerce.  (See *id.* at p. 57.)  The FAA
applies even "'in individual cases without showing any specific
effect upon interstate commerce' if in the aggregate the economic
activity in question would represent 'a general practice . . .
subject to federal control . . . .'"  (*Ibid;* see *Shepard v. Edward
Mackay Enterprises, Inc.*, *supra*, 148 Cal.App.4th at p. 1098.)

As discussed, California Transit provides paratransit
services that public entities are required to provide under the
ADA and that are subject to federal control.  The first section of
the ADA includes congressional findings that "discrimination
against individuals with disabilities persists in such critical areas
as . . . transportation" and that the "continuing existence" of
discrimination in such areas "denies people with disabilities the
opportunity to compete on an equal basis and to pursue those
opportunities for which our free society is justifiably famous, and
costs the United States billions of dollars in unnecessary
expenses resulting from dependency and nonproductivity."
(42 U.S.C. § 12101(a)(3), (8).)  That section also states the intent
of Congress "to invoke the sweep of congressional authority,
including the power to enforce the fourteenth amendment and to
regulate commerce, in order to address the major areas of
discrimination faced day-to-day by people with disabilities."  (*Id.*,
§ 12101(b)(4); see *United States. v. Morrison* (2000) 529 U.S. 598,
612 [120 S.Ct. 1740, 146 L.Ed.2d 658] ["[w]hile 'Congress
normally is not required to make formal findings as to the
substantial burdens that an activity has on interstate commerce,'

[citation] the existence of such findings may 'enable [a court] to evaluate the legislative judgment that the activity in question substantially affect[s] interstate commerce'"].)

In addition, a report by the House Committee on Energy and Commerce on the ADA described the ways in which public transportation services for persons with disabilities impacts their participation in the national economy. (See *United States v. Lopez* (1995) 514 U.S. 549, 562 [115 S.Ct. 1624, 131 L.Ed.2d 626] [in evaluating the scope of Congress's commerce power, "we of course consider legislative findings, and indeed even congressional committee findings, regarding effect on interstate commerce"].) As described in the report, one of the primary purposes of the ADA was "to bring persons with disabilities into the economic and social mainstream of American life . . . ." (See H.R. Rept. 101-485, Part 4, 2d Sess., p. 23.) Regarding public transportation services, the committee report recognized "[t]ransportation plays a central role in the lives of all Americans" and "is a veritable lifeline to the economic and social benefits that our Nation offers its citizens. The absence of effective access to the transportation network can mean, in turn, the inability to obtain satisfactory employment" and "to take full advantage of the services and other opportunities provided by both the public and private sectors." (*Id.* at p. 25.)

The stated findings in the ADA, the findings in the report of the House Committee on Energy and Commerce, and Congress's stated intent to legislate through its commerce power reflect a determination that the activity regulated by the ADA— including the provision of paratransit services for persons with disabilities—is among the "economic 'class of activities' that have a substantial effect on interstate commerce." (*Gonzalez v. Raich*,

12

*supra*, 545 U.S. at p. 17.) Thus, the paratransit services provided by California Transit and Evenskaas—the same ones mandated by the ADA—involve interstate commerce. (*Gonzalez*, *supra*, 545 U.S. at p. 17; see *Preseault v. I.C.C.* (1990) 494 U.S. 1, 17 [110 S.Ct. 914, 108 L.Ed.2d 1] [courts "must defer to a congressional finding that a regulated activity affects interstate commerce 'if there is any rational basis for such a finding'"]; *Kilroy v. Superior Court* (1997) 54 Cal.App.4th 793, 808 [same].) Indeed, in *Citizens Bank*, *supra*, 539 U.S. 52 the United States Supreme Court stated that Congress's ability to use the commerce power to regulate the activity governed by the arbitration agreement in that case was relevant to, if not determinative of, whether the FAA applied. (See *id.* at pp. 53, 57-58 ["[n]o elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause"]; see also *Hedges v. Carrigan* (2004) 117 Cal.App.4th 578, 586 [FAA applied to a residential purchase agreement containing an arbitration provision because the buyer intended to finance the purchase with a loan "subject to the jurisdiction of the United States Department of Housing and Urban Development"].)

Other factors show the paratransit services provided by California Transit involve interstate commerce. First, transportation is an inherently commercial activity. (See *Carter v. Carter Coal Co.* (1936) 298 U.S. 238, 298 [56 S.Ct. 855, 80 L.Ed. 1160] ["[a]s used in the Constitution, the word 'commerce' is the equivalent of the phrase 'intercourse for the purposes of trade,' and includes transportation"]; *United States v. Adams* (9th Cir. 2003) 343 F.3d 1024, 1028 [activities that "have

13

an economic or commercial character will likely have a nexus to interstate commerce and, accordingly, would be proper objects of congressional regulation under the Commerce Clause"].) Even when providing only local transportation services, California Transit drivers are almost certain to use highways, one of the "instrumentalities of interstate commerce" (*United States v. Guest* (1966) 383 U.S. 745, 757 [86 S.Ct. 1170, 16 L.Ed.2d 239]), as well as vehicles that have at some point traveled across state lines. Courts considering arbitration agreements between local transportation or delivery companies and their drivers have recognized the agreements involve interstate commerce under the FAA. (See *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 658 [because a company that provided shuttle services to airports and harbors was "'clearly' . . . involved in interstate commerce," the FAA applied to an arbitration agreement between the company and a driver, even though "the driver only drove shuttles within California"]; *Rogers v. Lyft* (N.D. Cal. 2020) 452 F.Supp.3d 904, 916 [rideshare drivers' work "predominantly entails intrastate trips, an activity that undoubtedly affects interstate commerce"]; *Simeon v. Domino's Pizza LLC* (E.D.N.Y., Feb. 6, 2019, 17 CV 5550) 2019 WL 7882143, at p. 3 [FAA applied to an arbitration agreement between a pizza delivery driver and his employer because "meal delivery services unquestionably 'affect' and 'involve' commerce and commercial activity"]; *Magana v. DoorDash, Inc.* (N.D. Cal. 2018) 343 F.Supp.3d 891, 900 [that local delivery drivers "facilitate the transportation of goods that originated across state

14

lines" is "almost certainly . . . enough under the United States Constitution's Commerce Clause"].)[4]

Second, although the California Transit defendants provided limited evidence of where their drivers picked up and dropped off the majority of their passengers, there was at least some evidence their paratransit services facilitated economic activity by passengers. For example, Beatriz Gonzalez, a supervisor and Access Training Manager for California Transit, provided uncontradicted testimony that "[m]any of the trips requested by Access passengers are to and from medical facilities

---

[4] Section 1 of the FAA exempts from the statute "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." As the United States Supreme Court explained in *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105 [121 S.Ct. 1302, 149 L.Ed.2d 234], "the specific phrase 'engaged in commerce' [is] understood to have a more limited reach" than the phrase "'involving commerce.'" (*Id.* at p. 115; see *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 762 ["The catchall phrase 'any other class of workers engaged in foreign or interstate commerce' in section 1 does not refer to all workers involved in foreign or interstate commerce, but rather only to 'transportation workers,' which means 'those workers "'actually engaged in the movement of goods in interstate commerce.'"'"].) The courts in *Rogers v. Lyft, supra*, 452 F.Supp.3d 904 and *Magana v. DoorDash, Inc.*, *supra*, 343 F.Supp.3d 891 held that local rideshare drivers and delivery drivers, respectively, were not "engaged in interstate commerce" for purposes of section 1, even though their activities more broadly involved and affected interstate commerce. (*Rogers*, at pp. 915-916; *Magana*, at pp. 899-900.) Evenskaas did not argue in the trial court, and does not argue on appeal, he is a transportation worker engaged in interstate commerce for purposes of section 1.

15

and doctors offices," places where further economic activity occurs.  At the very least, her testimony confirmed Congress's determination that public transportation services for persons with disabilities facilitates further economic activity that substantially affects interstate commerce.  (See *Preseault v. I.C.C.*, *supra*, 494 U.S. at p. 17.)

Evenskaas cites several cases holding the FAA did not apply, including cases involving arbitration agreements between employers and employees.  (See *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 239 [FAA did not apply to an arbitration agreement between a local painting company and its employee]; *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 688 [FAA did not apply to an arbitration agreement between an investment firm and its employee]; *Hoover v. American Income Life Ins. Co.*, *supra*, 206 Cal.App.4th at pp. 1207-1208 [FAA did not apply to an arbitration agreement between an employee and a company that sold life insurance policies in the employee's state of residence]; *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 200 [FAA did not apply to an arbitration agreement between a homeowner and a contractor].) These cases have little applicability here:  None of them involved an arbitration agreement between an employer and an employee hired to provide commercial services required by federal law enacted by Congress under its commerce power.  Moreover, in *Carbajal, Lane*, and *Woolls* the party arguing the FAA applied did not present evidence of the party's business that would show a connection to interstate commerce.  (See *Carbajal*, at p. 239 [painting company "presented nothing about the nature of its business or [the employee's] work that showed any connection with interstate commerce"]; *Lane*, at p. 688 [investment firm

16

"produced no declaration about the nature of its business or the scope of [the employee's] employment"]; *Woolls*, at p. 214 [contractor "did not make any evidentiary showing in furtherance of his assertion [the] transaction involve[d] interstate commerce"].)[5]  In contrast, the California Transit defendants presented undisputed evidence that California Transit provides paratransit services mandated by the ADA, that Evenskaas was hired to and did provide those services, and that the paratransit services facilitated further commercial activity by the passengers who used the services.

---

[5]     In *Hoover v. American Income Life Ins. Co.*, *supra*, 206 Cal.App.4th 1193 the employee was a California resident who worked for a company based in Texas that sold life insurance policies in California.  The court held the FAA did not apply because "there was no evidence in the record establishing that the relationship between [the employee] and [the employer] had a specific effect or 'bear[ing] on interstate commerce in a substantial way.'"  The court's reasoning in *Hoover* was questionable.  Ordinarily, commercial transactions, including insurance transactions, between residents of different states constitute interstate commerce.  (See *United States v. South Eastern Underwriters Assn.* (1944) 322 U.S. 533, 553 ["No commercial enterprise of any kind which conducts its activities across state lines has been held to be wholly beyond the regulatory power of Congress under the Commerce Clause.  We cannot make an exception of the business of insurance."].)  The court in *Hoover* also failed to consider whether the employee's activity—selling insurance for an out-of-state company— "in the aggregate . . .  represent[ed] 'a general practice . . . subject to federal control . . . .'" (*Citizens Bank*, *supra*, 539 U.S. at p. 57.)

C.     *The Class Action Waiver Is Enforceable*

As discussed, the trial court ruled that under the California Supreme Court's decision in *Gentry*, *supra*, 42 Cal.4th 443 the class action waiver was unenforceable.  The California Transit defendants argue the FAA preempts the *Gentry* rule governing when class action waivers in employment arbitration agreements are unenforceable.  They are correct again.  In *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 the California Supreme Court ruled that, in light of the United States Supreme Court's decision in *AT&T v. Concepcion* (2011) 563 U.S. 333 [131 S.Ct. 174, 179 L.Ed.2d 742],[6] "the FAA preempts the *Gentry* rule." (*Iskanian*, at pp. 361, 366; see *Viking River Cruises, Inc. v. Moriana*, *supra*, ___ U.S. at p. ___ [p. 7] ["'a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so'"].)  Evenskaas does not dispute the FAA preempts the *Gentry* rule, nor does he argue the arbitration agreement or his class action waiver is otherwise unenforceable.

---

[6]     In *AT&T v. Concepcion* the United States Supreme Court held the FAA preempted the California Supreme Court's decision in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 that certain class action waivers in consumer contracts of adhesion were unenforceable.  (*AT&T v. Concepcion*, *supra*, 563 U.S. at p. 344.)  The United States Supreme Court stated that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  (*Ibid.*)

18

## DISPOSITION

The order denying the California Transit defendants' motion to compel arbitration is reversed. The trial court is directed to enter a new order granting the motion and dismissing Evenskaas's class claims. The California Transit defendants' request for judicial notice is denied. The California Transit defendants are to recover their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.